715 So.2d 1165 (1998)
Martin J. KILSTEIN and Rona Kilstein, etc., Appellants,
v.
ENCLAVE RESORT, INC. d/b/a Enclave at Orlando, Appellee.
Nos. 97-1985, 97-2383.
District Court of Appeal of Florida, Fifth District.
August 28, 1998.
*1166 Hinda Klein of Conroy, Simberg & Ganon, P.A., Hollywood, for Appellants.
Mitchell J. Frank, Orlando, and Jeffrey G. Slater of Slater & Brightman, Orlando, for Appellee.
W. SHARP, Judge.
Martin and Rona Kilstein, on their own behalf and on behalf of their minor daughter Ashley, appeal from a final order which dismissed their lawsuit against Enclave Resort, Inc. for a discovery violation. The Kilsteins are residents of Pennsylvania who vacationed in Florida and stayed in Enclave's condominium. While they were in the building, Ashley was allegedly injured psychologically and physically when an elevator in which she was riding malfunctioned and she was trapped in the elevator for a period of time before management was able to extricate her. After reviewing this record, we think dismissal of the Kilsteins' lawsuit was too severe a sanction to have been resorted to at this point in the proceedings.
The Kilstein lawsuit was filed on May 17, 1996. On October 17, 1996, the suit was voluntarily dismissed pursuant to an agreed order between the parties. An amended complaint was filed on January 24, 1997, although the court order approving the filing was not rendered until February 17, 1997. Enclave filed its answer, perhaps prematurely, on February 13, 1997.
On December 19, 1996, technically before the amended complaint was properly of record, Enclave served the Kilsteins with interrogatories and a request to produce. Because this discovery request was not timely responded to, on February 12, 1997 Enclave filed a motion to compel the Kilsteins to respond. On February 12, 1997, the court entered an "Agreed Order" on this motion. *1167 This was the only order rendered by the court compelling discovery. It simply provides that the parties agree the plaintiff shall serve "full and complete answers to Defendant's interrogatories, and fully comply with Defendant's Request to Produce, by no later than February 24, 1997."
On February 24, 1997, counsel for the Kilsteins served Enclave with a document titled "Unverified Answers to Defendant's Interrogatories."[1] Promptly on February 26, 1997, Enclave filed a motion for sanctions for violating the agreed order on discovery. It sought imposition of sanctions, including but not limited to attorney's fees for the "gross violation" of the agreed order on discovery. In the motion, Enclave listed a number of interrogatories that had not been answered completely, or at all. In response to some interrogatories, the Kilsteins responded they did not have the information or that the information had been requested and would be furnished.
Enclave also pointed out that the Kilsteins had not produced any documentation requested in the motion to produce. Similarly, the Kilsteins responded that medical records and bills relating to Ashley's injuries had been requested and would be supplied as soon as received, that other items did not exist, or that they would be supplied later if relevant.
Counsel for Enclave (Mitchell Frank) set his motion for sanctions for a hearing on March 6, 1997 at 9:45. a.m. No attorney for the Kilsteins appeared at that hearing. When the trial judge tried to contact counsel for the Kilsteins (Robert Selig) he learned that Selig had moved from the firm's Orlando office to its West Palm Beach office. This move was known to Frank and the new address appears in the court file. The judge was connected by telephone to Selig's secretary in West Palm Beach and was told Selig was attending a trial. The judge asked to speak to a partner in the firm and was put on "hold" and, after fifteen minutes, he hung up.
Selig and his secretary filed affidavits with the court to explain why he had not attended the March 6th hearing. They averred that Selig had been engaged to try a case before the circuit court in Palm Beach on March 5th. At the end of the day, it became apparent the trial could not be completed that day as planned and the judge determined to finish it on the 6th.
Selig called his secretary at 4:30 p.m. He told her to fax a letter to Frank explaining why he could not attend the hearing on the 6th, and request that the hearing on sanctions be rescheduled. Selig stated in his affidavit that he expected the hearing would be postponed. However, he should have made an effort to contact the court, as well as opposing counsel, and sought a continuance.
On March 6th, Frank telephoned Selig's secretary and told her he intended to go to the hearing, even though Selig could not be there. The secretary told him Selig was already at the other trial. She tried to locate another attorney in the firm to at least appear at the hearing by telephone. By the time she was able to locate someone, the 9:45 a.m. hearing in Orlando was concluded. Frank did not deny the truth of any of these matters.
On March 25, 1997, the trial court granted Enclave's motion for sanctions, stating the following:
1. No attorney with Conroy, Simberg & Gannon, P.A. appeared either by telephone or in person to contest the Motion., When no attorney appeared, either in person or by telephone, the Court first called the Orlando office of Conroy, Simberg and requested to speak to a lawyer. After being put on hold, the Court was directly transferred to Mr. Selig's secretary. The Court then requested that he speak to a partner. After a total of approximately 15 minutes without any attorney appearing, *1168 the Court at 10:00 a.m. terminated the phone call.
2. Defendant's Motion is Granted, for the reasons given in the same Motion. This cause is hereby dismissed with prejudice.
Selig promptly filed a motion for rehearing. In the motion, he set forth the same explanation of why he had not attended the hearing on March 6th and apologized for the lack of response by his law firm on the morning of March 6th. He also alleged at no time had he acted in bad faith, nor had he deliberately disregarded or disobeyed the court's authority or an order.
On June 16th, Selig filed a "Better Response" to the request for production. It consists of copies of Ashley's medical records compiled by Mental Health Associates, Inc., of Philadelphia, Pennsylvania, which had done a psychological evaluation of her after the elevator accident. The test results and reports of three different mental health experts are included. Selig alleged in the pleading that he had just received these documents from the Kilsteins.
At the hearing on Selig's motion for rehearing, the same factual situation was readdressed. Frank did not deny that Selig had contacted him and requested the hearing on March 6th be rescheduled. Nor did he comment as to why he did not tell the court on March 6th about Selig's conflict and Selig's request to reschedule the hearing, although (as noted above) Selig should have handled this himself. There is some degree of fault on both sides in this case, but the upshot was to upset the trial judge, and understandably so.
However, at the hearing on Selig's motion for rehearing, Frank urged that the court had dismissed the complaint primarily because Selig had been slow in responding to his discovery requests and still had not fully complied with the Agreed Ordernot his failure to appear on March 6th. He also said Selig was not to blame but rather Selig's client had been slow to respond with the necessary information and that because the client is a Pennsylvania lawyer his lack of responsiveness must be considered willful. The court agreed, finding that:
Plaintiff's failure to provide discovery has been and continues to be in bad faith and in willful disregard of the Agreed Order entered by this Court on February 12, 1997.
The court also imposed costs and attorney's fees against the Kilsteins, which was consolidated with the appeal from the order dismissing the lawsuit.
The issue on appeal is whether the trial court abused its discretion in dismissing the Kilsteins' lawsuit as a sanction for their failure to respond to Enclave's discovery requests. This is an area in which the appellate courts accord the trial courts broad discretion to act. See Mercer v. Raine, 443 So.2d 944 (Fla.1983). Fact findings made by the trial court as to willfulness and gross disregard of court orders will not be disturbed if supported by the record. Id.
However, discovery rules should not be employed to shut out parties from their day in court.[2] In Florida, access to the courts is guaranteed by our state constitution.[3] The protection of this constitutional right is no doubt a major factor operating in the resolution of cases such as this. See U.S.B. Acquisition Co. v. U.S. Block Corp., 564 So.2d 221 (Fla. 4th DCA), rev. denied, 574 So.2d 144 (Fla.1990).
The courts require that the record demonstrate a party's deliberate and contumacious disregard of the trial court's authority, bad faith, or willful disregard or gross indifference to the court's orders before going to the ultimate sanctiondismissal of a cause of action or striking a defendant's defenses. Something short of that is an abuse of discretion. See Swidzinska v. Cejas, 702 So.2d 630 (Fla. 5th DCA 1997); New Hampshire Ins. Co. v. Royal Ins. Co., 559 So.2d 102 (Fla. 4th DCA 1990); Motzer v. Tanner, *1169 561 So.2d 1336 (Fla. 5th DCA 1990); U.S.B. Acquisition Co., Inc.; Summit Chase Condominium v. Protean Investors, Inc., 421 So.2d 562 (Fla. 3d DCA 1982).
In this case, there was only one court order which was "disobeyed." In other cases, parties have ignored and disobeyed multiple court orders and ones which are far more specific as to what must be answered or must be produced. See Johnson v. Allstate Ins. Co., 410 So.2d 978 (Fla. 5th DCA 1982). Here, the only order concerning discovery was extremely general and subject to interpretation. It required the Kilsteins only to serve "full and complete answers" and "fully comply" with the request to produce.
The discovery process had just begun and when the discovery controversy arose, the case was not even at issue, and it was far from being ready to set for trial. See Ramos v. Sanchez, 375 So.2d 51 (Fla. 2d DCA 1979); Summit Chase. Enclave began pushing for the discovery even before its answer was filed to the amended complaint. It did not demonstrate prejudice in the sense of being forced to trial without necessary discovery being complete.
Finally, this is not a case in which one party flat-out refused to furnish information requested. It is a partial compliance case in which information is trickling in slowly, which courts have described as "foot-dragging," not stone-walling. In these kinds of cases, the court should initially devise sanctions and remedies short of the ultimate sanction of dismissal. See Steele v. Chapnick, 552 So.2d 209 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 631 (Fla.1990).
Accordingly, we reverse the order dismissing the Kilsteins' amended complaint and the order imposing costs and sanctions on the Kilsteins and remand for further proceedings. Should further delay and difficulties continue concerning discovery, the court may revisit use of the ultimate sanction. On remand the court may consider the imposition of lesser sanctions for the discovery violations, which have occurred up to this point in this lawsuit, and any future violations.
REVERSED and REMANDED
ANTOON, J., concurs.
COBB, J., dissents without opinion.
NOTES
[1] We do not think that the fact that an unverified response to the discovery request was initially filed by counsel for the Kilsteins, which shortly thereafter was replaced by a verified pleading, is a material failing in this case. See New Hampshire Ins. Co. v. Royal Ins. Co., 559 So.2d 102 (Fla. 4th DCA 1990). An identical set of answers to the interrogatories was mailed to counsel for Enclave on February 26, 1997, except that the word "unverified" was deleted and a copy of an oath signed by Martin Kilstein was attached.
[2] Summit Chase Condominium Ass'n, Inc. v. Protean Investors, Inc., 421 So.2d 562, 565 (Schwartz, J., dissenting in part, and concurring in part).
[3] Art. I, § 21, Fla. Const.